UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASNA AKTHER, Plaintiff, v. RICHARD A. HAYES, Defendant. | Case No. 26-cv-07139-TSH<br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**<br>Re: Dkt. No. 18 |

## I. INTRODUCTION

Plaintiff Hasna Akther, who is self-represented, brings this action against Defendant Richard A. Hayes for claims under the Fair Housing Act ("FHA") arising from Akther's tenancy with Hayes. ECF No. 1. Pending before the Court is Hayes's Motion to Dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 18 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the December 17, 2026, hearing. For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.[1]

## II. BACKGROUND

### A. Factual Background

Akther, who resides in San Francisco, California, rented a room in a residential property located in San Francisco and owned by Hayes between 2023 and 2026. First Am. Compl. ("FAC") ¶¶ 1–2, 6 (ECF No. 8). Overall, Akther alleges that during her tenancy, Hayes subjected her to "a prolonged and escalating pattern of unwelcome sexual conduct" and "unequal terms and

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 2, 10-2.

United States District Court
Northern District of California

conditions of tenancy" based on her sex and retaliated against her for reporting the conduct. FAC at 10–11.

**1. The Parties' Rental History**

Hayes owns a single-family home, located at 329 Irving Street, San Francisco, California (the "Property"). *Id.* ¶ 6. Hayes has used agents, brokers, and/or rental listing services to rent rooms at the Property for approximately forty years. *Id.* ¶ 43. Hayes advertised rooms for rent at the Property using his late wife's name who lived with dementia for several years. *Id.* ¶ 44.

On August 20, 2023, Akther moved into a room at the Property that she rented from Hayes. *Id.* ¶ 6. During Akther's tenancy, Hayes rented out two other rooms at the Property to separate households and rented to multiple tenants over the course of her tenancy. *Id.* ¶¶ 7, 43. Akther's tenancy ended on January 31, 2026, when she moved out of the Property. *Id.* ¶¶ 7, 40.

The parties were involved in legal proceedings related to the tenancy prior to Akther filing this action. On June 12, 2025, Hayes, through his attorney, served Akther with a Termination Notice because Hayes needed the Property to live alone. *Id.* ¶¶ 21, 45. Akther subsequently filed a complaint with the San Francisco Rent Board; on July 29, 2025, Akther offered to mediate this action, but Hayes declined the offer. *Id.* ¶¶ 25, 31. On September 2, 2025, Hayes filed an unlawful detainer action against Akther in San Francisco Superior Court (Case No. CUD-25-679736). *Id.* ¶ 27. On November 25, 2025, the Rent Board scheduled the Rent Board action for remote mediation to occur on January 5, 2026. *Id.* ¶ 31.

On December 11, 2025, the parties attended a mandatory settlement conference for Hayes's unlawful detainer action and entered into a written settlement agreement ("Settlement Agreement"). *Id.* ¶¶ 32–34. Akther agreed to vacate the Property by January 31, 2026. *Id.* ¶ 32. The Settlement Agreement contains a "Release of Claims." *Id.* ¶ 33. Specifically, the Agreement states:

> This agreement, notwithstanding section 1542 of the California Civil Code, which provides that:
>
> 'A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his settlement with the debtor.'

> This Agreement is a full settlement of any and all disputes, claims and causes of action defendant may claim. Such claims are currently either known, unknown, or unforeseen. Defendant understands and acknowledges the significance and consequence of such specific waiver of Civil Code section 1542 and hereby assume full responsibility for any injuries, damages, losses or liability that may hereafter incur from the above-described dispute.

Settlement Agreement ¶¶ 13–14 (ECF No. 1-1 at 61).[2]

**2. Akther's Allegations**

Akther alleges the following in the FAC. Hayes subjected Akther to a course of unwelcome sexual conduct throughout her tenancy with Hayes. FAC at 10. In 2024, Hayes attempted to approach Akther physically in a way that made her feel uncomfortable, stared at her in the dark, monitored her movements, and expressed a desire to eat dinner in her room. *Id.* ¶¶ 8, 10–12. Between February and April 2025, Hayes looked at Akther and mouthed the word "sex," appeared near her repeatedly at late hours, attempted to enter her room under the pretext of checking a heater, and told her, "I want to have sex with you." *Id.* ¶¶ 13, 15–17.

In April 2025, Akther contacted the police regarding Hayes's behavior and harassment; Akther's report to the police is a protected activity under the FHA because it constitutes making a complaint about discrimination. *Id.* ¶ 18, p. 11. Before police arrived, Hayes stared at Akther's chest and commented on her clothing and undergarments; after the police left, Hayes stood close to Akther and wanted to kiss her. *Id.* ¶ 18. On June 6, 2025, Hayes did not open the front door for several hours while Akther was locked out. *Id.* ¶ 20. On June 12, 2025, Hayes served Akther with a Termination Notice because Hayes needed the Property to live alone. *Id.* ¶ 21. In July and August 2025, Hayes interfered with pest control services Akther needed for her rented room due to her dermatological condition. *Id.* ¶¶ 22, 26. On September 2, 2025, Hayes filed an unlawful

---

[2] Akther attached the Settlement Agreement to the original Complaint but did not attach it to the FAC. However, Akther cites to the Settlement Agreement in the FAC and references it as an exhibit. *See, e.g.*, FAC ¶¶ 32 ("Attached Settlement Agreement Exhibit – O"), 33 (discussing "Release of Claims"). Therefore, the Court incorporates by reference the Settlement Agreement because Akther's claims necessarily rely on the Agreement, and its authenticity and relevance are not contested. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (explaining that under the doctrine of incorporation-by-reference, a court may consider a document not attached to the complaint provided the complaint "necessarily relies" on the document or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested); Mot. at 5:10–17.



United States District Court
Northern District of California

detainer action against Akther. *Id.* ¶ 27. On January 15, 2026, Hayes refused to provide Akther a rental reference letter even though she owed no money and had left the unit in good condition. *Id.* ¶ 39. Hayes took these actions in response to Akther reporting Hayes's harassment to the police. *Id.* at 11. For example, Hayes currently has a tenant at the Property which contradicts Hayes's claim that he needed the Property to live alone. *Id.* ¶ 45.

During the parties' settlement conference in December 2025, Akther was self-represented and Hayes was represented by counsel (James M. Millar). *Id.* ¶ 34. Akther informed the court that she would not release her Rent Board case, and the Superior Court judge told Akther the case would not settle unless she released the Rent Board case. *Id.* After negotiations, Akther told the judge she would release the Rend Board case, and there was no discussion of any FHA claims. *Id.* The issues raised in the Rent Board case and unlawful detainer action concerned habitability and Hayes's desire to recover possession of the entire Property; they did not concern sexual harassment, discrimination, or retaliation. *Id.* ¶ 35. After reaching an agreement, Millar drafted the Settlement Agreement which included a release under Cal. Civ. Code § 1542, and Millar did not explain the provision to Akther. *Id.* ¶ 34. Akther relied on the judge's verbal confirmation that she was releasing the Rent Board case; she did not release the FHA claims during the conference. *Id.* In sum, when Akther executed the parties' Settlement Agreement, she did not knowingly or voluntarily release her FHA claims, "which are a matter of public policy and cannot be lawfully waived by private agreement." *Id.* ¶ 33.

On July 7, 2026, Akther sought psychiatric evaluation for emotional distress that resulted from Hayes's harassment, retaliation, and housing discrimination. *Id.* ¶ 42.

**B. Procedural Background**

On July 13, 2026, Akther filed this action against Hayes, alleging two causes of action: (1) Hostile Environment and Quid Pro Quo Sexual Harassment in Violation of the Fair Housing Act (42 U.S.C. § 3604(a), (b)); and (2) Retaliation and Coercion in Violation of the Fair Housing Act (42 U.S.C. § 3617). ECF No. 1. On August 28, 2026, Akther filed the operative First Amended Complaint ("FAC") alleging the same two causes of action. ECF No. 8. Akther seeks, *inter alia*, a declaratory judgment, injunctive relief, and damages. FAC at 11–12.



United States District Court
Northern District of California

United States District Court
Northern District of California

On October 19, 2026, Hayes filed the instant Motion to Dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 18 ("Mot."). On October 20, 2026, Akther filed an Opposition. ECF No. 20 ("Opp."). On November 9, 2026, Hayes filed a Reply. ECF No. 21 ("Reply").

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by

United States District Court
Northern District of California

amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

## IV. DISCUSSION

Hayes moves to dismiss both of Akther's claims for failing to state a cognizable claim. Mot. at 1. Hayes argues that the claims fail because they (1) are barred by a general release of all claims; (2) fail to sufficiently plead required elements; and (3) are foreclosed by a statutory exemption. *Id.*

In sum, the Court concludes that Akther's claims are not barred at the pleadings stage by the parties' prior Settlement Agreement. The Court further concludes that Akther pleads a cognizable claim for retaliation under the FHA. Therefore, dismissal of Akther's Retaliation and Coercion Claim (Claim 2) is not warranted. However, because the Court concludes that Akther's Hostile Environment and Quid Pro Quo Sexual Harassment Claim (Claim 1) is barred by an exemption, that claim must be dismissed.

### A. Release Of Claims

Akther alleges claims under the FHA for sex discrimination and retaliation. FAC at 10–11. Hayes argues that Akther's "claims are barred by the general release she executed to settle the parties' unlawful detainer action." Mot. at 5:10–7:16. Akther contends that the parties' prior Settlement Agreement cannot conclusively bar her FHA claims at the pleadings stage, given the allegations in the FAC. Opp. at 4:2–5:10.

"The construction and enforcement of settlement agreements are governed by principles of

local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). Here, the Court applies California contract law in interpreting the parties' Settlement Agreement as it was entered into in California and the parties both reside in California. *Cf. id.* at 756–60.

"Under California law, settlement agreements are governed by general principles of contract law." *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 704 (9th Cir. 1989). In California, contract interpretation is a question of law "when it is based on the words of the instrument alone[.]" *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992) (in bank) (citing Cal. Civ. Code § 1636). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *State of California v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 195 (2012) (citation omitted). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation." *Cont'l Ins. Co.*, 55 Cal. 4th at 195 (citing Cal. Civ. Code §§ 1638, 1644) (cleaned up). Moreover, "language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 15 Cal. 5th 1106, 1136 (2024) (citation omitted).

A contract provision "will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Id.* (citation omitted); *see also WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996) ("The trial court's determination of whether an ambiguity exists is a question of law."). "Parol or extrinsic evidence is admissible to resolve an ambiguity." *WYDA*, 42 Cal. App. 4th at 1710. Courts consider "whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968). Where "ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the

contract are questions of fact that may properly be resolved by the jury." *City of Hope*, 43 Cal. 4th at 395.

Here, the parties disagree over the scope of the claims release in the Settlement Agreement which states:

> This Agreement is a full settlement of any and all disputes, claims and causes of action defendant may claim. Such claims are currently either known, unknown, or unforeseen. Defendant understands and acknowledges the significance and consequence of such specific waiver of Civil Code section 1542 and hereby assume full responsibility for any injuries, damages, losses or liability that may hereafter incur from the above-described dispute.

Settlement Agreement ¶ 14. Hayes argues that the provision covers Akther's FHA claims because they arise from the same tenancy and dispute that the Settlement Agreement resolved. Mot. at 5:10–7:16. Akther contends that the provision covers claims related to possession and Rent Board habitability issues resolved in the state court proceedings. Opp. at 4:2–5:10.

The Court concludes that Akther's allegations plausibly show that the claims release provision is susceptible to the construction she advances. Akther alleges that the Settlement Agreement arose from an unlawful detainer proceeding and resolved issues of possession and habitability; that during the settlement conference, the judge asked her if she would release the Rent Board case; that discussions at the conference concerned the Rent Board case but not FHA claims; and that Hayes's counsel drafted the Agreement and did not explain the claims release provision to Akther. Opp. at 4:3–9 (citing FAC ¶¶ 33–35). Akther further points out that the language "above-described dispute" suggests that the claims release only applies to claims arising from the Rent Board case and unlawful detainer action. *Id.* at 5:5–10. Hayes responds that the language does not narrow the scope of the claims release because "read as a whole, the Agreement resolves the parties' entire dispute arising out of the tenancy"; however, Hayes does not explain what part of the Agreement supports this proposition. Reply at 2:8–11. Overall, Akther plausibly alleges that the claims release does not extend to her federal FHA claims because it only covers claims related to the dispute settled in state court proceedings. Therefore, because the claims release provision might be susceptible to Akther's proposed construction, the Court finds it premature to interpret the provision in the absence of a developed evidentiary record. *Cf.*

*Integrated Glob. Concepts, Inc. v. j2 Glob., Inc.*, No. C-12-03434-RMW, 2014 WL 1230910, at *5 (N.D. Cal. Mar. 21, 2014) (receiving extrinsic evidence on summary judgment to resolve dispute over interpretation of 1542 waiver after declining to resolve issue on pleadings where "Agreement might be susceptible to more than one interpretation").

Accordingly, the Court declines to find that Akther's FHA claims are barred at the pleadings stage by the parties' prior Settlement Agreement.

**B. Sufficiency Of Claims**

Hayes argues that Akther fails to state a cognizable claim under the FHA. Mot. at 7:17–11:14.

**1. Hostile Environment and Quid Pro Quo Sexual Harassment Claim (Claim 1)**

Akther alleges that Hayes violated 42 U.S.C. § 3604(a) and (b) of the FHA ("Section 3604") through sex discrimination. FAC at 10. Hayes argues that Akther's claim for sex discrimination fails because (1) it does not plead a cognizable hostile environment theory because the allegations do not establish severe or pervasive conduct; (2) it does not plead a cognizable quid pro quo theory because there are no allegations that a housing benefit was conditioned on Akther's submission to any sexual demand; and (3) the single-family, owner-occupied exemption bars the claim. Mot. at 7:17–9:24, 10:20–11:14.

Under the FHA, the discrimination provisions in Section 3604 apply to all dwellings unless an exemption under 42 U.S.C. § 3603(b) ("Section 3603(b)") applies. 42 U.S.C. § 3603(a)(2). Section 3603(b) states:

> Nothing in section 3604 of this title (other than subsection (c)) shall apply to—
>
> (1) any single-family house sold or rented by an owner: *Provided*, That such private individual owner does not own more than three such single-family houses at any one time: *Provided further*, That in the case of the sale of any such single-family house by a private individual owner not residing in such house at the time of such sale or who was not the most recent resident of such house prior to such sale, the exemption granted by this subsection shall apply only with respect to one such sale within any twenty-four month period: *Provided further*, That such bona fide private individual owner does not own any interest in, nor is there owned or reserved on his behalf, under any express or voluntary agreement, title to or any right to all or a portion of the proceeds from the sale or rental of, more than three



United States District Court
Northern District of California

> such single-family houses at any one time: *Provided further*, That after December 31, 1969, the sale or rental of any such single-family house shall be excepted from the application of this subchapter only if such house is sold or rented (A) without the use in any manner of the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such facilities or services of any person in the business of selling or renting dwellings, or of any employee or agent of any such broker, agent, salesman, or person and (B) without the publication, posting or mailing, after notice, of any advertisement or written notice in violation of section 3604(c) of this title; but nothing in this proviso shall prohibit the use of attorneys, escrow agents, abstractors, title companies, and other such professional assistance as necessary to perfect or transfer the title, or
>
> (2) rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence.

*Id.* at § 3603(b) (emphasis in original). "Courts have consistently characterized exemptions to the FHA as affirmative defenses." *United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005); *see Balvage v. Ryderwood Improvement & Serv. Ass'n, Inc.*, 642 F.3d 765, 776 (9th Cir. 2011) (explaining FHA's housing for older persons exemption is affirmative defense). As such, courts treat the exemptions in Section 3603(b) as affirmative defenses. *See Thurmond v. Bowman*, 211 F. Supp. 3d 554, 562 n.5 (W.D.N.Y. 2016) ("The exemptions within § 3603(b) are affirmative defenses."); *Wilson v. Liu*, No. 19-cv-04226-PJH, 2019 WL 5550059, at *3 (N.D. Cal. Oct. 28, 2019) (concluding exemption under Section 3603(b)(1) is affirmative defense); *Space Hunters*, 429 F.3d at 425 (concluding exemption under Section 3603(b)(2) is affirmative defense); *Letourneau v. 8200 Byron Ave LLC*, No. 1:21-cv-22907, 2023 WL 12082462, at *3 n.7 (S.D. Fla. Oct. 23, 2023) (same).

Here, the Court concludes that Akther's Section 3604 claim is barred by an exemption. Hayes argues that Akther's Section 3604 claim is barred by both prongs of Section 3603(b): the "single-family" prong and the "owner-occupied" prong. Mot. at 10:20–11:14. Akther contends that Section 3603(b)(1) does not bar her claim at the pleadings stage because she alleges that Hayes used a rental-listing service. Opp. at 8:7–9:2. But Akther does not address whether Section 3603(b)(2) bars the claim. Because the two prongs of Section 3603(b) are separated by the word "or," they constitute alternative pathways for satisfying the exemption. *See Loughrin v. United States*, 573 U.S. 351, 357 (2014) ("As we have recognized, that term's 'ordinary use is almost

United States District Court
Northern District of California

always disjunctive, that is, the words it connects are to be given separate meanings.'") (citation omitted); *United States v. Nishiie*, 996 F.3d 1013, 1023 (9th Cir. 2021) ("As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately.") (citation omitted). In other words, the exemption applies if either the "single-family" or "owner-occupied" prong is satisfied. *See Singleton v. Gendason*, 545 F.2d 1224, 1225 (9th Cir. 1976) (discussing "the single-family exemption, 42 U.S.C. § 3603(b)(1)"); *Space Hunters*, 429 F.3d at 425 (discussing 42 U.S.C. § 3603(b)(2), "commonly referred to as the 'Mrs. Murphy' exemption on the theory then that the statute did not reach the metaphorical Mrs. Murphy's boardinghouse") (cleaned up); *Uychiat v. Hotel-Like, Inc.*, No. 22-cv -1730-SJB-ST, 2026 WL 2494709, at *8 (E.D.N.Y. Aug. 25, 2026) ("[Plaintiff] makes various arguments as to other provisions, namely § 3603(b)(1), which has an entirely different set of criteria and elements.").

Akther alleges that Hayes owns and lives in the single-family Property where she rented a room; that during her tenancy, Hayes rented out two other rooms to separate households; and that Hayes rented to multiple tenants during her tenancy. FAC ¶¶ 6–7, 43. Akther also cites a "Lease" that states Hayes rents out "two spare bedrooms in our home" and Hayes and his wife "generally use the two living room areas for ourselves." *See id.* ¶ 7 ("Attached Lease Exhibit – A"); ECF No. 1-1 at 1 (Lease). The allegations make clear that Section 3603(b)(2) bars Akther's Section 3604 claim because Akther rented a room in a dwelling where Hayes, the dwelling owner, occupied a living quarter, and where the dwelling was a single-family home not intended to be occupied by more than four families. *Cf. Uychiat*, 2026 WL 2494709, at *3, 8 (finding Section 3603(b)(2) exemption applicable where plaintiff alleged defendant rented three other rooms in the home owned by defendant in which plaintiff and defendant stayed). Therefore, because the FAC establishes that the Section 3603(b)(2) exemption applies, Akther's Section 3604 claim cannot go forward. *See U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) ("[D]ismissal based on an affirmative defense is permitted when *the complaint* establishes the defense.") (emphasis in original).

Accordingly, the Court **GRANTS** Hayes's motion to dismiss Akther's Hostile Environment and Quid Pro Quo Sexual Harassment Claim (Claim 1). Akther requests leave to

United States District Court
Northern District of California

amend if "the Court finds any part of the FAC deficient." Opp. at 9:3–9. However, leave to amend is not warranted because the claim cannot be cured by the allegation of other facts. *Lopez*, 203 F.3d at 1127; *see Carvalho*, 629 F.3d at 892–93 (noting leave to amend should be denied where amendment is futile). Therefore, the Court **DENIES** Akther leave to amend Claim 1.

**2. Retaliation and Coercion Claim (Claim 2)**

Akther alleges that Hayes violated 42 U.S.C. § 3617 of the FHA ("Section 3617") through Hayes's actions in response to Akther reporting Hayes's harassment to the police. FAC at 11. Hayes argues that Akther's retaliation claim fails because she does not establish a *prima facie* case of retaliation. Mot. at 9:25–10:19.

The FHA states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Section 3617 "reaches all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 670 (9th Cir. 2025) (cleaned up). Courts apply the *McDonnell Douglas* burden-shifting framework to Section 3617 claims such that a plaintiff "must first establish a *prima facie* case by showing that (1) [she] was engaged in protected activity; (2) [she] suffered an adverse action; and (3) there was a causal link between the two." *Id.* (cleaned up).

"[P]laintiffs in an FHA action need not prove that the discriminatory purpose was the *sole* purpose of the challenged action; they need only demonstrate that such a purpose was *a* motivating factor." *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128, 1144 (9th Cir. 2024) (emphasis in original) (cleaned up).

Here, the Court concludes that Akther pleads a cognizable claim under Section 3617. Hayes argues that Akther does not plead a viable causal link between her protected activity and adverse action.[3] Mot. at 10:6–19. Akther responds that the chronology of events alleged in the

---

[3] In his Reply, Hayes argues for the first time that Akther "does not plead that the report was activity protected by the FHA," and does not plead "facts showing [Hayes] knew of any FHA-

FAC supports a retaliation claim. Opp. at 7:7–8:2. The Court agrees. Akther alleges that after she reported Hayes's harassment to the police, Hayes locked her out of the Property, served her with a Termination Notice, interfered with medically necessary pest control services, initiated an unlawful detainer action, and refused to provide a rental reference letter without a valid reason. FAC ¶¶ 20–22, 26–27, 39. Contrary to Hayes's assertion, temporal order can show causation at the pleadings stage; thus, Akther's alleged timing of events supports her retaliation claim. Reply at 4:21–24; *cf. Green v. Mercy Hous., Inc.*, No. C-18-04888-WHA, 2018 WL 6704185, at *5 (N.D. Cal. Dec. 20, 2018) (declining to dismiss Section 3617 claim where plaintiff alleged he engaged in protected activity and adverse action occurred as a result following protected activity). Moreover, Hayes's argument that the alleged retaliatory actions were merely him exercising his legal rights as the Property owner fails. Mot. at 10:6–19. The argument both ignores the FAC's allegations unrelated to Hayes's legal proceedings and is undercut by the FAC's allegations that Hayes issued a Termination Notice so that he could live alone yet presently has a tenant. FAC ¶¶ 20–22, 26–27, 39, 45.

Accordingly, the Court **DENIES** Hayes's motion to dismiss Akther's Retaliation and Coercion Claim (Claim 2).

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** Hayes's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: November 23, 2026

THOMAS S. HIXSON
United States Magistrate Judge

---

protected report." Reply at 4:24–28. Hayes cannot sandbag Akther with new arguments raised for the first time in his Reply. *See VLSI Tech. LLC v. Intel Corp.*, 706 F. Supp. 3d 953, 974–75 (N.D. Cal. 2023) (declining to consider argument raised for the first time in reply brief because argument was waived); *Competitive Techs., Inc. v. Fujitsu Ltd.*, 333 F. Supp. 2d 858, 863–63 (N.D. Cal. 2004) (declining to reach arguments raised for the first time in reply brief and noting fairness concerns). The Court therefore declines to reach these arguments.